UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RESERVE FUNDING GROUP LLC,

            *Plaintiff*,

  -against-

CALIFORNIA ORGANIC FERTILIZERS, INC; UNIVISIT, INC; MINERAL KING MINERALS, INC; COFI, LLC; OZ VIRTUAL, INC.; WORLDWIDE GLOBAL MANAGEMENT LIMITED, and TIMOTHY STEMWEDEL,

            *Defendants*.

24-CV-1112 (ARR) (LB)

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff, Reserve Funding Group LLC, brought the instant action for breach of contract and breach of guaranty. Before me is defendants' motion to dismiss on the basis that the contract at issue is usurious and therefore illegal as a matter of law. For the reasons set forth below, defendants' motion is denied.

## BACKGROUND

Timothy Stemwedel is the founder, president, and chief executive officer of defendant California Organic Fertilizers, Inc., a California corporation.[1] Stemwedel Decl. ¶¶ 1–2, ECF No. 1-2. In 2021, Stemwedel entered into an agreement with Reserve Funding Group LLC ("Reserve"), a company engaged in the receivables financing business. Compl. ¶¶ 1, 9, ECF No. 1-1. Receivables financing involves one company purchasing a percentage of another business's future

---

[1] Stemwedel is also the former chief executive of defendants Univisit, Inc., Mineral King Minerals, Inc., and Oz Virtual, Inc., as well as the former manager of defendant COFI, LLC. Stemwedel Decl. ¶¶ 4–6, 8. Deborah Stemwedel is the former manager of defendant Worldwide Global Management Limited. *Id.* ¶ 7. None of these companies are currently active. *Id.* ¶¶ 4–8.

accounts receivable in exchange for an upfront purchase price. *See id.* The Revenue Purchase Agreement between defendants[2] and Reserve provides that Reserve will purchase a percentage of the former's total future accounts receivable up to $749,500 in exchange for an upfront purchase price of $500,000. *Id.* ¶ 9; Revenue Purchase Agreement 1, ECF No. 1-1. It further states that defendants will deliver future receivables via daily electronic debit remittances of $4,684.38. Compl. ¶ 11; Revenue Purchase Agreement 1. This amount represents an estimate of 25% of defendants' average daily revenue. Revenue Purchase Agreement 1; *see* Pl.'s Opp'n Mot. Dismiss 9 ("Opp'n"), ECF No. 10.

The Revenue Purchase Agreement contains several other provisions relevant to this motion. A reconciliation provision states that once within the five days of the close of each calendar month, defendants can request a retroactive reconciliation of the daily amounts owed; an adjustment provision permits a similar prospective change to the daily amount owed. Revenue Purchase Agreement ¶¶ 1.4–1.5. These provisions theoretically permit a downward adjustment of the daily remittances if defendants experience a downturn in revenue. *See* Opp'n 8. The Agreement further provides that a number of events, including the violation of any of the contract's terms, will be considered events of default, upon which Reserve will immediately be entitled to 100% of defendants' average daily revenue. Revenue Purchase Agreement 1; *id.* ¶ 3.1. The Agreement grants Reserve a security interest and lien upon all present and future accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory owned or acquired by defendants; if there are ever insufficient funds in defendants' accounts to cover the daily amounts

---

[2] Defendants include California Organic Fertilizers, which is party to the agreement, and Stemwedel, who signed the agreement. *See* Revenue Purchase Agreement, ECF No. 1-1. They also include the other companies listed in note 1; the Agreement provides that those companies are subject to its term and provides Reserve with a blanket security interest in those companies. *Id.* Ex. A.

owed, Reserve "is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral." *Id.* at 5. Bankruptcy is not listed as an event of default; however, the Agreement provides that if defendants do file for bankruptcy, Reserve "is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral." *Id.*; *see id.* ¶ 3.2. The Revenue Purchase Agreement further states that defendants are "knowingly and willingly waiv[ing] the defense of [u]sury in any action or proceeding." *Id.* ¶ 1.11.

Reserve alleges that on May 1, 2023, defendants changed the designated bank account for daily remittances without Reserve's authorization, preventing Reserve from collecting future receivables. Compl. ¶ 13. Reserve commenced a lawsuit in New York state court alleging breach of contract and breach of guaranty. *See generally id.* Defendants removed the action to federal court on the basis of diversity jurisdiction. Notice of Removal ¶ 2, ECF No. 1. Defendants then filed the instant motion to dismiss, raising the affirmative defense of usury. Defs.' Mem. Supp. Mot. Dismiss 3 ("Mem. Supp."), ECF No. 7-1.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss pursuant Rule 12(b)(6), I must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). My duty "is merely to assess the

legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (quotation omitted). In addition to the complaint itself, I may look "to documents attached to the complaint as an exhibit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

I can decide a motion to dismiss under Rule 12(b)(6) based on an affirmative defense "if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). In considering an affirmative defense at this procedural posture, I "remain under an obligation to accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, No. 16-CV-4270, 2019 WL 3940218, at *3 (S.D.N.Y. July 29, 2019).

Usury is an affirmative defense. *Hillair Cap. Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013); *Gandy Mach., Inc. v. Pogue*, 483 N.Y.S.2d 744, 745 (3d Dep't 1984). Under New York's criminal usury statute, any loan with an interest rate exceeding 25% per year is usurious. N.Y. Penal Law § 190.40. When a contract is in violation of usury laws, "the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled." *Seidel v. 18 E. 17th St. Owners, Inc.*, 586 N.Y.S.2d 240, 242 (1992). Criminal usury cannot be waived by contract. *Hammelburger v. Foursome Inn Corp.*, 437 N.Y.S.2d 356, 359 (2d Dep't 1980).

The party seeking to raise the defense of usury must show that (1) "a loan or forbearance of money" (2) "requiring interest in violation of a usury statute" was charged (3) "with the intent to take interest in excess of the legal rate." *Blue Wolf Cap. Fund II, L.P. v. Am. Stevedoring Inc.*, 961 N.Y.S.2d 86, 89 (1st Dep't 2013). The New York Court of Appeals has not yet addressed how to analyze whether a transaction is a loan (as opposed to a sale or investment), and the Appellate

Divisions "have yet to settle on any specific framework" for classifying agreements such as the one at issue here. *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 247 (S.D.N.Y. 2022). The dominant approach is to consider three factors: "(1) whether there is a reconciliation provision in the agreement" (if there is, it is less likely a loan); "(2) whether the agreement has a finite term" (if it does, it is more likely a loan); and "(3) whether there is any recourse should the merchant declare bankruptcy" (if there is, it is more likely a loan). *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 312 (2d Dep't 2020). These factors, however, are not dispositive. *Haymount*, 609 F. Supp. 3d at 247. Another key consideration is "whether the transaction represent[s] a real transfer of risk"—that is, whether the purported receivables purchaser "actually bears the risk of a revenue shortfall or if the agreement is structured to ensure an absolute payment obligation." *Id.* at 248 (quotation omitted). "If usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law." *Blue Wolf*, 961 N.Y.S.2d at 89.

## DISCUSSION

Dismissal on the basis of the affirmative defense of usury is not appropriate, because the elements of the defense are not plain from the face of the complaint.[3] *Pani*, 152 F.3d at 74.

---

[3] Although the Revenue Purchase Agreement provides that defendants "knowingly and willingly waive[] the defense of [u]sury in any action or proceeding," Revenue Purchase Agreement ¶ 1.11, Reserve addresses defendants' arguments on the merits and does not argue that the defense is waived. I therefore treat as forfeited any argument that the defense is waived. *See Alnutt v. United States*, 588 F. App'x 45, 45–46 (2d Cir. 2014) (recognizing that a defense of waiver can be forfeited). Any such argument would nonetheless fail because criminal usury cannot be waived. *Hammelburger*, 437 N.Y.S.2d at 359.

5

**I.     Defendants cannot establish at this stage of litigation that the Revenue Purchase Agreement is a loan.**

"Usury laws apply only to loans," *Seidel*, 586 N.Y.S.2d at 244—and it is not apparent from the face of the complaint and attached documents that the Revenue Purchase Agreement at issue here is a loan.

First, the Revenue Purchase Agreement—attached to the complaint, *see Brass*, 987 F.2d at 150—contains reconciliation and adjustment provisions, which counsel against finding that the agreement is a loan. Revenue Purchase Agreement ¶¶ 1.4–1.5; *see, e.g.*, *Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 196 N.Y.S.3d 256, 259 (4th Dep't 2023). Although a reconciliation or adjustment process that is "unduly onerous" or has "a sham quality" may render the provisions unenforceable, *US Info. Grp. LLC v. EBF Holdings, LLC*, No. 22-CV-6661, 2023 WL 6198803, at *7–8 (S.D.N.Y. Sept. 22, 2023) (collecting cases), here, any such qualities are not apparent from the face of the complaint. The Revenue Purchase Agreement requires requests for reconciliation to be made within five business days of the close of the calendar month, and provides that requests for adjustment may be made every two calendar weeks. Revenue Purchase Agreement ¶¶ 1.4–1.5. No court has held as a matter of law that such specifications render the provisions shams, nor do the complaint or accompanying documents contain allegations that, for example, defendants attempted to invoke the provisions but were unsuccessful. *See, e.g.*, *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (noting the lack of allegations "that reconciliation did not in actuality function as agreed (or, indeed, that [the party arguing that the agreement was a loan] ever even requested reconciliation)"); *Fox Cap. Grp., Inc. v Superior Caregivers, LLC*, 2022 N.Y. Misc. LEXIS 3225, at *7 (Sup. Ct. 2022) ("Defendants never sought a reconciliation so they are not in a position to speculate what would happen if they did.").

6

In cases with the opposite procedural posture, where *plaintiffs* allege that *defendants* made usurious loans, courts have denied motions to dismiss based on plausible allegations that similar constraints on invoking reconciliation or adjustment processes render them unduly onerous. *See, e.g.*, *Haymount*, 609 F. Supp. 3d at 248 (holding that the plaintiff plausibly alleged that the fact that it could "only seek reconciliation once per calendar month, and then only during the last five business days of a month" despite "high daily remittance amounts" made the reconciliation provision "impossible to use"); *cf. New Y-Capp v. Arch Cap. Funding, LLC*, No. 18-CV-3223, 2022 WL 4813962, at *5 (S.D.N.Y. Sept. 30, 2022) (concluding that a plaintiff plausibly alleged that reconciliation provision granting the funder "sole discretion" was an obstacle to the plaintiff's actual invocation of the provision). The Second Circuit has also affirmed a grant of summary judgment to a plaintiff alleging usury where, after discovery, the court concluded that "the Agreement's nominal reconciliation provision d[id] not, in fact, relieve [the plaintiff] of its obligation to pay [the defendant] the daily amount due." *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, No. 22-CV-1885, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023); *see also Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120, 2022 WL 1997207, at *13 (S.D.N.Y. June 6, 2022). Here, however, I cannot credit defendants' arguments that the provisions are effectively unusable, *see* Defs.' Reply Supp. Mot. Dismiss 3–4 ("Reply"), ECF No. 12, over the complaint's allegations and accompanying reasonable inferences that I must draw in plaintiff's favor, *see LaFaro*, 570 F.3d at 475—namely, that the provisions are not shams. Discovery may well reveal that the provisions are "impossible to use," *Haymount*, 609 F. Supp. 3d at 248, and that the reconciliation and adjustment provisions are merely "nominal," *Fleetwood Servs.*, 2023 WL 3882697, at *2. Yet because this is not apparent on the face of the complaint, defendants cannot

demonstrate at this stage that the provisions suggest that the Revenue Purchase Agreement is a loan.

Next, it is not apparent from the face of the complaint that the Revenue Purchase Agreement has a finite term, which counsels against it being a loan. *See, e.g.*, *Samson MCA*, 196 N.Y.S.3d at 259. Defendants argue that the daily remittance amount of $4,684.38, coupled with the effectively unusable reconciliation and adjustment provisions, results in a "definite term" of approximately 160 days, assuming defendants made daily payments until the total of $749,500 was collected. Mem. Supp. 3, 10–14. But as discussed above, at this procedural stage I cannot credit defendants' arguments that the reconciliation and adjustment provisions are unusable over the reasonable inference that the provisions function adequately. I accordingly must accept the Revenue Purchase Agreement's statement that "there is no . . . payment schedule and no time period during which the Purchased Amount must be collected." Revenue Purchase Agreement 1. Although the Agreement assumes daily remittances of $4,684.38, it also has provisions to reduce that amount, with no limitations on how much the remittances can be reduced. *See id.* ¶¶ 1.4–1.5. It is therefore reasonable to infer that defendants could be paying daily remittances for an indefinite amount of time. *See Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, No. 16-CV-1545 (DRH), 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019) ("The term in the Agreement is indefinite because . . . every time Defendants' receipts change the amount of time it will take for Plaintiff to be reimbursed will change, and there is no fixed end date by which Plaintiff must be paid."). Again, defendants may ultimately be able to show that the reconciliation and adjustment provisions are unduly onerous, and, if so, they may in turn be able to demonstrate that the Revenue Purchase Agreement does in practice have a fixed term. At this stage, however, they cannot demonstrate that the Agreement's term is finite.

Any recourse in the event of defendants' bankruptcy is minimal, at least from the face of the complaint. *See LG Funding*, 122 N.Y.S.3d at 312. Defendants contend that the Revenue Purchase Agreement gives Reserve recourse should defendants declare bankruptcy because the Agreement gives Reserve a security interest in defendants' assets and provides that if defendants ever have insufficient funds to cover their daily payments, those assets will become collateral; it further provides that if defendants do file a petition for bankruptcy, Reserve is "not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral." Mem. Supp. 15; Reply 6; Revenue Purchase Agreement at 5; *id.* ¶ 3.2. Reserve in turn points out that the Revenue Purchase Agreement does not make bankruptcy an event of default—in other words, the very fact that defendants go bankrupt will not entitle Reserve to invoke the Agreement's protections. Opp'n 20–21. Defendants' arguments, while somewhat attenuated, are well taken: Although the fact of bankruptcy does not constitute a breach, an inability to make daily payments would likely occur in the runup to bankruptcy; defendants' assets may therefore have become collateral by the time they declare bankruptcy; and the Agreement smooths Reserve's path to realizing on that collateral. Yet as with defendants' other arguments, this chain of events seems to presume that the reconciliation and adjustment provisions are effectively meaningless—conceivably, if those provisions are workable, the daily remittance amounts could be adjusted and defendants might never miss a daily payment. Although the Agreement nominally provides that Reserve will not face procedural barriers in realizing on any collateral in the event of defendants' bankruptcy, the events that would result in defendants' assets becoming collateral are somewhat speculative. It is therefore a stretch to say that it is apparent from the face of the complaint that the Agreement gives Reserve recourse in bankruptcy. Defendants have pointed to no case in which any court found provisions such as these to counsel in favor of there being a loan, and have no

response to the cases cited by Reserve in which the absence of any provision making bankruptcy an event of default counseled against there being a loan. *See Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 327 (2d Dep't 2022); *Byzfunder NY LLC v. Holy City Collision LLC*, 194 N.Y.S.3d 924, 2023 WL 5763521, *1 (Sup. Ct. 2023); *cf. Samson MCA*, 196 N.Y.S.3d at 259 (concluding that an agreement was not a loan where, "for the most part, [the funder] did not have recourse in the event that the [purchaser] declared bankruptcy"). To the extent that it is apparent from the face of the complaint that the Agreement gives Reserve any recourse in the event of bankruptcy, that recourse is limited and cannot overcome the weight of the other *LG Funding* factors.

Finally, defendants urge that the Revenue Purchase Agreement should be construed as a loan because it places the risk of nonpayment on defendants rather than on Reserve. Mem. Supp. 7–9; *see Haymount*, 609 F. Supp. 3d at 248. For the reasons discussed above, however, it is not obvious from the face of the complaint that Reserve does not bear the risk of nonpayment or that the Agreement "is structured to ensure an absolute payment obligation." *Haymount*, 609 F. Supp. 3d at 248 (quotation omitted). If the reconciliation and adjustment provisions are workable, then defendants should theoretically be able to prevent default by relying on those provisions; if defendants were to adjust their daily remittances downward, then it is Reserve, rather than defendants, who would bear the risk of nonpayment. Defendants emphasize that the Agreement provides that a violation of any of its terms constitutes incurable default, *see* Mem. Supp. 7–8, but this point is not terribly relevant if I draw the reasonable inference that the reconciliation and adjustment provisions will allow defendants to avoid violating any of the Agreement's terms. It is certainly possible that in practice, the unworkability of the reconciliation and adjustment provisions, coupled with the other provisions that defendants highlight, *see id.* at

7–9, result in the risk of nonpayment falling squarely on defendants rather than Reserve. But at this stage, I cannot conclude that the risk of nonpayment plainly falls on defendants.

I do not doubt that defendants may eventually be able to demonstrate that the Revenue Purchase Agreement's reconciliation and adjustment provisions are functionally unworkable, resulting in an effective finite term, giving defendants recourse in bankruptcy, and placing the risk of nonpayment on defendants. Yet given the procedural posture of this motion, I cannot conclude at this time that the Agreement is a loan. Defendants therefore cannot establish this critical element of usury.

**II.     It is not clear from the face of the complaint that any interest rate was usurious, nor is it apparent that Reserve intended to take usurious interest.**

Although denial of defendants' motion to dismiss is appropriate based solely on their current inability to establish that the Revenue Purchase Agreement is a loan, *see Blue Wolf*, 961 N.Y.S.2d at 89, I briefly touch on the remaining two elements of the affirmative defense of usury. Defendants can establish neither.

Defendants argue that the interest rate is usurious because the Revenue Purchase Agreement requires them to pay $749,500 over 160 daily installments of $4,684.38, resulting in an interest rate of at least 50% per year. Mem. Supp. 3. This argument presupposes, however, that the reconciliation and adjustment provisions are unusable and that defendants are locked into the $4,684.38 daily remittance amount. For the reasons discussed above, this is not apparent from the face of the complaint. It is true that if defendants are required to pay $749,500—$249,500 more than the $500,000 purchase price—within 160 days, the interest rate is more than 50% per year.[4]

---

[4] *See* Investopedia, *Simple vs. Compound Interest: Definitions and Formulas*, https://www.investopedia.com/articles/investing/020614/learn-simple-and-compound-interest.asp. Simple interest is calculated as follows: Simple interest = Principal * interest rate *

11

But if the reconciliation and/or adjustment provisions permit defendants to dramatically reduce their daily payments, the interest rate is far lower.[5] New York's usury statute forbids loans that charge an interest rate in excess of 25% per year. N.Y. Penal Law § 190.40. Without knowing how long it might take defendants to pay the $249,500 they owe Reserve, it is impossible to know whether the Revenue Purchase Agreement, assuming that it is a loan, has a usurious interest rate. This element therefore does not appear on the face of the complaint—and indeed, the complaint itself states that the Agreement merely authorizes Reserve to collect future receivables "until such time" that it has collected the total amount. Compl. ¶ 11; *see also* Revenue Purchase Agreement 1 ("[T]here is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected); *Womack v. Cap. Stack, LLC*, No. 18-CV-4192, 2019 WL 4142740, at *12 (S.D.N.Y. Aug. 30, 2019) ("[T]he amount of time to pay the Purchased Amount can vary, thus rendering impossible any alleged calculation of an 'interest rate.'").

Finally, defendants have not meaningfully addressed the third element of usury—that, assuming a loan with an interest rate in excess of 25% per year, usurious interest was charged "*with the intent* to take interest in excess of the legal rate." *Blue Wolf*, 961 N.Y.S.2d at 89. Their original brief did not address this issue at all, *see generally* Mem. Supp., and their reply states cursorily that "all facts necessary to prove the usurious nature and intent of the [Agreement] are contained within the [Agreement] itself." Reply 7. Defendants have forfeited any argument regarding this element. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (holding that party's "single conclusory sentence" of argument on claim was tantamount to a

---

term. Assuming $249,500 in simple interest, a principal of $500,000, and a term of 160 days (.44 years), the interest rate on such a payment schedule would be 113.4%.

[5] If, for example, defendants can extend their payments over ten years using reconciliation and adjustment, the interest rate would be just under 5% using the formula set out in note 3.

12

waiver of that claim); *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or waived.").

Even if defendants' argument about intent were not forfeited, it is unavailing. Defendants state that "[a]s cited and discussed" elsewhere in their Reply, "courts have repeatedly made rulings regarding the existence of usurious intent and whether an agreement is a loan or a purchase of receivables based on the face of the agreements alone." Reply 7. They do not cite any cases in this sentence. After reviewing the other cases cited in their Reply, however, I conclude that none are instructive. Two do not address usury at all. *Endico Potatoes v. CIT Group/Factoring*, 67 F.3d 1063 (2d Cir 1995); *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022). Two involve usury, but do not address intent. *LG Funding*, 122 N.Y.S.3d 309; *Haymount Urgent Care PC v. GoFund Advance, LLC*, 650 F. Supp. 3d 204, 211 (S.D.N.Y. 2023). Three are in the opposite procedural posture, with defendants as the purported lenders; there, the courts concluded that the plaintiffs had adequately alleged the elements of usury, including intent. *Haymount*, 609 F. Supp. 3d 237; *Lateral Recovery LLC v. Funderz.net, LLC*, No. 22-CV-2170, 2024 WL 216533 (S.D.N.Y. Jan. 19, 2024); *Lateral Recovery LLC v. Queen Funding, LLC*, No. 21-CV-9607, 2022 WL 2829913 (S.D.N.Y. July 20, 2022). For the reasons discussed above, cases in this reversed procedural posture have little bearing on whether defendants *here* can establish usury at this stage. Only one case cited elsewhere in defendants' Reply, *AKF, Inc. v. Western Foot & Ankle Center*, 632 F. Supp. 3d 66 (E.D.N.Y. 2022), tracks this case's procedural posture—a plaintiff funder and a defendant arguing that the contract was usurious—but that case merely followed the well-established rule that "when a transaction's usurious nature is obvious, usurious intent is imputed as a matter of law." *Id.* at 80. Here, for the

reasons discussed above, it is not obvious from the face of the complaint that the transaction at issue here is usurious. I therefore cannot impute intent at this time, and defendants have made no other argument that the requisite intent was present.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:     April 12, 2024
           Brooklyn, New York